# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Anthony M. Fidrych and Patricia Anne Fidrych, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 2:17-2195-BHH |
| v. | ) ) | **ORDER** |
| Marriott International, Inc., | ) ) ) | |
| Defendant. | ) ) | |

This matter is before the Court upon Defendant Marriott International, Inc.'s ("Marriott" or "Defendant") motion to dismiss pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure, as well as the following motions filed by Plaintiffs Anthony and Patricia Anne Fidrych ("the Fidryches" or "Plaintiffs"): motion for reconsideration of the Honorable P. Michael Duffy's order granting Marriott's motion to set aside default; motion for sanctions pursuant to both Judge Duffy's prior order and Rule 54(d)(2) of the Federal Rules of Civil Procedure; and motion for discovery incident to the motion for sanctions. For the reasons set forth herein, the Court grants Marriott's motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and denies the Fidryches' motions for reconsideration, for sanctions, and for discovery.

**BACKGROUND**

This action arises out of an accident that occurred on December 17, 2015, at the Boscolo Milano Hotel in Milan, Italy, which Plaintiffs contend is one of Marrott's Autograph Collection of hotels. Specifically, the Fidryches allege in their complaint that Anthony Fidrych traveled to Milan as a pilot for the Gulfstream Aerospace Corporation. While in

Milan, he stayed at the Boscolo Milano, and he was injured when one of the hotel's shower doors shattered. He alleges that he is permanently disabled as a result and is no longer able to fly.

The Fidryches filed their complaint against Marriott on August 17, 2017, and on August 23, 2017, Plaintiffs' counsel served the summons and complaint on Marriott's agent for service of process, Corporate Creations Network, Inc., by certified mail with return receipt requested. Plaintiffs' counsel received the return receipt on August 28, 2017. Marriott did not file an answer, and the Fidryches moved for an entry of default on September 20, 2017. The Clerk entered the default on September 21, 2017. On October 10, the Fidryches filed a motion for default judgment. The following day, the Honorable P. Michael Duffy entered a one-page order granting the default judgment and indicating that a hearing would be scheduled to determine damages. When Judge Duffy entered the order, Marriott's time for responding to the motion for default judgment had not yet expired.

On October 17, 2017, within the time period allotted for a response to Plaintiffs' motion for default judgment, Marriott filed a motion to set aside default pursuant to Rules 55(c) and 60(b). The Fidryches filed a response in opposition to the motion on October 31, and Marriott filed a reply on November 7. On November 29, 2017, Judge Duffy entered an order granting Marriott's motion. Taking into account the fact that the order granting default judgment was filed prior to the expiration of the time for Marriott to respond to the motion for default judgment, the Court ultimately analyzed Marriott's motion under Rule 55(c)'s good cause standard rather than Rule 60(b)'s more demanding standard. *See Payne v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006) ("When deciding whether to set aside *an entry of default*, a district court should consider whether the moving party has a meritorious

defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic.") (emphasis added) (citations omitted)

On December 13, 2017, Marriott filed a motion to dismiss pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure. In its motion, Marriott asserts that it is not subject to the Court's personal jurisdiction; that the complaint fails to state a claim upon which relief may be granted; that the action should be dismissed pursuant to the doctrine of *forum non conveniens*; and that Plaintiffs cannot recover punitive damages as a matter of law. Plaintiffs filed a response in opposition to the motion on January 5, 2018, and Marriott filed a reply on January 18, 2018.

In the meantime, on December 22, 2017, Plaintiffs filed a motion for reconsideration of Judge Duffy's order setting aside default pursuant to Rules 55(c), 59(e), and 60(b). In their motion, Plaintiffs ask the Court to reinstate the October 11 order granting Plaintiffs' motion for default judgment. According to Plaintiffs, in setting aside the default judgment, Judge Duffy erroneously applied the "good cause" standard under Rule 55(c) when he should have applied the more demanding standard under Rule 60(b)(1) because a default judgment had been entered. Accordingly, Plaintiffs assert that reconsideration is warranted under Rule 59(e) to correct a clear error of law. On January 5, 2018, Marriott filed a response in opposition to Plaintiffs' motion for reconsideration, and Plaintiffs filed a reply on January 12, 2018.

In addition to filing a motion for reconsideration, on January 11, 2018, Plaintiffs filed a motion for sanctions in response to the invitation in Judge Duffy's October 11 order for Plaintiffs to suggest appropriate alternative sanctions to default judgment. In their motion,

3

Plaintiffs seek a total of $86,754.62 in attorney's fees and costs, and as an additional sanction, Plaintiffs seek an order denying with prejudice Marriott's motion to dismiss filed on December 13, 2017. Marriott filed a response in opposition to Marriott's motion on February 5, 2018, and Plaintiffs filed a reply on February 12, 2018.

On February 21, 2018, Plaintiffs also filed a motion for limited discovery incident to their motion for sanctions, seeking information regarding Marriott's conduct surrounding the default so the Court may judge based on the evidence whether Marriott acted in good faith. Marriott filed a response in opposition to Plaintiffs' motion for discovery on March 7, 2018, and Plaintiffs filed a reply on March 14, 2018. In April of 2018, this case was reassigned to the undersigned during a routine case redistribution.

## ANALYSIS

### I.     Plaintiffs' Motion for Reconsideration

Rule 59(e) of the Federal Rules of Civil Procedure allows for a "motion to alter or amend a judgment" for the following reasons: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Mayfield v. Nat'l Ass'n for Stock Car Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (quoting *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007) (internal quotation marks omitted)).

Here, Plaintiffs assert that Judge Duffy's application of Rule 55(c)'s "good cause" standard was a clear error of law because a default judgment had been entered, and thus, Judge Duffy should have applied Rule 60(b)'s more demanding standard. Plaintiffs point out that the cases relied upon by Judge Duffy involved setting aside an entry of default rather than a default judgment. *See, e.g., Colleton Preparatory Acad., Inc. v. Hoover*

4

*Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010) (setting forth the factors a court should consider in considering whether to set aside an entry of default).  In contrast, Plaintiffs assert that the Court should have considered *Park Corp. v. Lexington Ins. Co.*, where the Fourth Circuit Court of Appeals applied the more demanding standard set forth in Rule 60(b) because a default judgment had been entered.  812 F.2d 894 (4th Cir. 1987) (finding that the defendant was not entitled to relief from a default judgment under Rule 60(b)(1) because it "failed to offer an acceptable excuse, or any excuse at all, for its failure to respond").

In deciding whether to set aside an entry of default under Rule 55(c), a district court considers "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic."  *Payne*, 439 F.3d at 204-05 (citations omitted); *see also Colleton Preparatory Acad., Inc.*, 616 F.3d at 417.  On the other hand, to obtain relief from a judgment under Rule 60(b), a moving party must show that his motion is timely, that he has a meritorious defense to the action, and that the opposing party would not be unfairly prejudiced by having the judgment set aside.  *Park Corp.*, 812 F.2d at 896.  If the moving party makes such a showing, he or she then must satisfy one or more of the six grounds for relief set forth in Rule 60(b) in order to obtain relief from the judgment.  *Id.*; See *also Werner v. Carbo*, 731 F.2d 204, 206-07 (4th Cir. 1984); *Compton v. Alton Steamship Co.*, 608 F.2d 96, 102 (4th Cir. 1979).

In his October 11 order, Judge Duffy specifically considered whether to evaluate Marriott's motion to set aside default under either Rule 55(c) or 60(b) and ultimately applied

5

the former standard, noting that "the default judgment was entered before Marriott's time to respond to the Fidryches' motion seeking a default judgment had elapsed." (ECF No. 16 at 4.) In considering the relevant factors, Judge Duffy first found that Marriott made a showing of a meritorious defense. Second, Judge Duffy found that Marriott acted with reasonable promptness once it received notice of the default judgment but that this factor marginally favored the Fidryches because Marriott was properly served and initially chose not to appear. Third, Judge Duffy found that Marriott itself, and not counsel, bore the responsibility for the default, which weighed in favor of the Fidryches. Fourth, however, Judge Duffy found no potential prejudice to the Fidryches if the Court set aside the default judgment. Fifth, the Court found no evidence of other dilatory conduct on Marriott's part, and finally, the Court noted that less drastic sanctions are available. Because four of the six factors favored Marriott, Judge Duffy granted the motion to set aside default. (ECF No. 16.)

     Here, after review, the Court finds that Plaintiffs have failed to demonstrate that Judge Duffy's decision to apply Rule 55(c)'s "good cause" standard was a clear error of law. First, the Court notes that no damages hearing was held and no formal judgment was entered by the Clerk of Court. More importantly, however, as Judge Duffy noted, Marriott filed its motion to set aside default within the time period for filing a response to the motion for default judgment. Although Plaintiffs assert that "Marriott did not have a time period for responding to the Fidryches' motion for a default judgment because it was not entitled to notice of the motion and the default judgment had already been entered," the Court agrees with Marriott that the order granting default judgment was entered prematurely. Stated plainly, it is the undersigned's practice to wait until the time for filing a response to a motion

6

for default judgment has passed before granting a motion for default judgment. Accordingly, the Court finds no clear error of law in Judge Duffy's application of the Rule 55(c) "good cause" standard, or in his findings on the relevant factors.[1]

## II.     **Plaintiffs' Motions for Sanctions and for Discovery**

In the order granting Marriott's motion for relief from default, Judge Duffy determined that less drastic sanctions were available and noted that the Fourth Circuit has looked approvingly on an award of attorney's fees and costs to the party opposing the motion to set aside the entry of default.  (ECF No. 16 at 6.)  Judge Duffy specifically invited the Fidryches "to suggest appropriate alternative sanctions to default judgment," noting that the Court's example of attorney's fees was illustrative only.  (*Id.*)

In response, the Fidryches filed a motion for sanctions, seeking an award of attorney's fees and out-of-pocket costs in the total amount of $86,754.62.  In addition, Plaintiffs seek a nonmonetary sanction, in the form of a request that the Court deny with prejudice Marriott's motion to dismiss.

Marriott opposes Plaintiffs' motion and asserts that Plaintiffs have failed to show that the attorney's fees Plaintiffs seek are reasonable or that they were in fact incurred.  In addition, Marriott contends that Plaintiffs' request that the Court deny Marriott's motion with prejudice would violate Marriott's rights to have its legal argument heard on the merits.

Following Marriott's response, Plaintiffs filed a motion for discovery incident to the

---

[1] In addition, the Court notes as a practical matter, that even if it were to apply Rule 60 to the facts of this case, Plaintiffs presume that Marriott would only qualify for relief by satisfying Rule 60(b)(1)'s "excusable neglect" standard, when in fact to qualify for relief under Rule 60, a party must demonstrate the existence of *any* of the grounds for relief set forth in subsections (1) through (6) of Rule 60(b).  For the reasons set forth in greater detail below, the Court believes Marriott's jurisdictional arguments may entitle it to relief under Rule 60(b)(4).  *See, e.g.*, *Vinten v. Jeantot Marine Alliances, S.A.*, 191 F. Supp. 2d 642 (D.S.C. 2002).

7

motion for sanctions, asserting that Marriott opened the door on the issue of "good faith," and asking for limited discovery into Defendants' conduct surrounding the default so the Court can judge based on the evidence whether Marriott acted in good faith or bad faith.

After review of these motions, the Court denies them both. First, the Court agrees with Marriott that Plaintiffs' request for more than $86,000.00 in attorney's fees and costs is excessive, and that Plaintiffs have not shown an adequate causal link between the default judgment and the total requested fees, whether incurred or paid. In addition, the Court finds that it would be inappropriate to grant Plaintiffs' request and deny Marriott's motion to dismiss with prejudice. Accordingly, the Court denies Plaintiffs' motion for sanctions, and because the Court sees no reason to grant discovery incident to the motion for sanctions, the Court also denies Plaintiffs' motion for discovery.

## II.     Marriott's Motion to Dismiss

In its motion to dismiss, Marriott first asserts that Plaintiffs' complaint should be dismissed under Rule 12(b)(2) of the Federal Rules of Civil Procedure because Marriott is not subject to the Court's personal jurisdiction. In addition, Marriott asserts that Plaintiffs' complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiffs' complaint fails to state a claim upon which relief may be granted. Next, Marriott asserts that even if the complaint adequately states a claim, this action should be dismissed based on the doctrine of *forum non conveniens*. Finally, Marriott asserts that Plaintiffs should be enjoined from seeking punitive damages because nothing in the complaint suggest wilful, wanton, or reckless conduct by Marriott.

### A.     Personal Jurisdiction

8

When a non-resident defendant challenges a court's power to exercise personal jurisdiction over it by filing a motion pursuant to Rule 12(b)(2), "the jurisidictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)) (internal quotation marks omitted).  Furthermore, when a district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing and by relying on the complaint and affidavits alone, "the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." *Id.* (quoting *Combs*, 886 F.2d at 676) (internal quotation marks omitted).  The district court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* (quoting *Combs*, 886 F.2d at 676) (internal quotation marks omitted).  In ruling on a motion to dismiss for lack of personal jurisdiction, the Court may consider evidence outside of the pleadings, such as affidavits and other evidentiary materials, without converting the motion to dismiss into a motion for summary judgment. *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992).

A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law.  Fed. R. Civ. P. 4(k)(1)(A); *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).  "Thus, for a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. *Christian*

9

*Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). "South Carolina's long-arm statute has been interpreted to reach the outer bounds permitted by the Due Process Clause."[2] *ESAB Grp.*, 126 F.3d at 623. Therefore, the appropriate question for a court considering a personal jurisdiction defense raised by an out-of-state defendant is whether that defendant has "minimum contacts with [South Carolina] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (stating that the exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum state, such that requiring the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice.")); *see Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 834 (D.S.C. 2015) ("Because the South Carolina long-arm statute is coextensive with the Due Process Clause, the sole question on a motion to dismiss for lack of personal jurisdiction is whether the exercise of personal jurisdiction would violate due process." (citing *Tuttle Dozer Works, Inc. v. Gyro–Trac (USA), Inc.*, 463 F. Supp. 2d 544,

---

[2] South Carolina's long arm statute provides as follows:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's: (1) transacting any business in this State; (2) contracting to supply services or things in the State; (3) commission of a tortious act in whole or in part in this State; (4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State; (5) having an interest in, using, or possessing real property in this State; (6) contracting to insure any person, property, or risk located within this State at the time of contracting; (7) entry into a contract to be performed in whole or in part by either party in this State; or (8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C. Code Ann. § 36-2-803(A) (2005).

547 (D.S.C. 2006); *Cockrell v. Hillerich & Bradsby Co.*, 611 S.E.2d 505, 508 (2005))).

Pursuant to the law, personal jurisdiction may arise through general jurisdiction, or specific jurisdiction, which is based on the conduct alleged in the suit. *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n. 15 (4th Cir. 2009); *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002). Under general jurisdiction, a defendant's contacts or activities in the forum state are not the basis for the suit, but the defendant may be sued in this court "for any reason, regardless of where the relevant conduct occurred," because its activities in South Carolina are "continuous and systematic." *CFA Inst.*, 551 F.3d at 292 n.15. These activities must be "so substantial and of such a nature as to justify suit against [a defendant] on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe Co.*, 326 U.S. at 318. When the defendant is a corporation, "general jurisdiction requires affiliations 'so continuous and systematic as to render [the foreign corporation] essentially at home in the forum State,' i.e., comparable to a domestic enterprise in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11 (2014) (internal citation and quotation marks omitted) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 576 U.S. 915, 919 (2011)).

Under specific jurisdiction, on the other hand, a defendant may be sued in this Court if the litigation results from alleged injuries that arose out of or is related to the defendant's contacts with South Carolina, and those contacts were sufficient. *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). To determine whether specific jurisdiction exists, courts employ a "minimum contacts" analysis that examines "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed

11

at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.' " *ALS Scan, Inc.*, 293 F.3d at 712. Because this three-part inquiry "'focuses on the relationship among the defendant, the forum, and the litigation,'" the Supreme Court has emphasized "[t]wo related aspects of this necessary relationship." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quotation marks omitted) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). "First, the relationship must arise out of contacts that the 'defendant himself' creates with the forum State." *Id.* at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, (1985)). "Second, [the] 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.*

### 1.     General Jurisdiction

In its motion to dismiss, Marriott first asserts that the Court lacks general jurisdiction over it because Marriott is neither incorporated nor headquartered in South Carolina and because it is not otherwise "at home" in South Carolina. *See Daimler AG*, 571 U.S. at 122 (indicating that "a court may assert general jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State'") (quoting *Goodyear v. Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Marriott asserts that it is incorporated in Delaware with its principal place of business in Maryland, and that its South Carolina presence is only a small fraction of its worldwide operations. Specifically, Marriott indicates that of the approximately 6,200 hotels in the Marriott system worldwide, only ninety–or 1.45%–are located in South Carolina, and that it does not actually own or operate any of those hotels. Rather, Marriott asserts that

it franchises sixty-three, and the rest are licensed or managed by affiliates of Marriott.

In response to Marriott's argument, Plaintiffs assert that they have established a prima facie case of general jurisdiction because Marriott has been doing business in South Carolina under a Certificate of Authority pursuant to South Carolina law. *See* S.C. Code Ann. § 33-15-101. Plaintiffs assert that a foreign corporation operating under a South Carolina certificate of authority is "comparable to a domestic enterprise." (ECF No. 26 at 11 (quoting *Companion Prop. & Cas. Co. v. U.S. Bank Nat'l Ass'n*, 2016 WL 6781057 (D.S.C. Nov. 16, 2016)).) Plaintiffs further assert that general jurisdiction over Marriott exists based on Marriott's continuous and systematic contacts in South Carolina "in furtherance of its hotel business in general and its 'Autograph Collection' hotels specifically." (*Id.*) In addition, Plaintiffs attempt to distinguish the cases cited by Marriott–*Daimler* and *Goodyear*–on the basis that the defendants in those cases did not have contacts in the forum state.

After review, the Court agrees with Marriott that the South Carolina certificate of authority merely demonstrates that Marriott is permitted to transact business in South Carolina and does not in itself demonstrate that Marriott's contacts with South Carolina are so continuous and systematic to render it "at home" in South Carolina. As Marriott points out in its reply, courts in the Fourth Circuit, as well as courts in other circuits, have found that the existence of a certificate of authority, or the fact that a corporation is registered to do business in a particular state, does not itself establish general jurisdiction. *See, e.g.*, *Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745, 748 (4th Cir. 1971) ("Applying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another. The principles of due process require a firmer foundation than mere compliance

13

with state domestication statutes."); *Burrows v. Gen. Motors Co.*, 2013 WL 3967115, at *3-4 (D.S.C. July 31, 2013) (declining to find the defendant's contacts with South Carolina sufficient to exercise general jurisdiction even though the defendant was registered to do business in South Carolina).

Likewise, with respect to Plaintiffs' assertion that Marriott's presence in South Carolina justifies the exercise of general jurisdiction, the Court agrees with Marriott that Plaintiffs have not provided any evidence to substantiate that Marriott is "at home" here to warrant the exercise of general jurisdiction as contemplated by the Supreme Court in *Daimler* and *Goodyear*, and by this Court in *Companion Property*. *See Daimler*, 571 U.S. at 122 n. 19 ("Only in an 'exceptional case' might a 'corporation's operations in a forum other than its formal place of incorporation or principal place of business . . . be so substantial and of such a nature as to render the corporation at home in that State."); *Companion Prop.*, 2016 WL 6781057, *7 (quoting the same). Ultimately, the Court agrees with Marriott that this is not an "exceptional case" where Defendant's contacts with South Carolina are so continuous and systematic to render it essentially at home in this state. Therefore, the Court concludes that Plaintiffs have failed to meet their burden to show that Defendant should be subject to the Court's general jurisdiction. *See DeGregorio v. Marriott Internat'l, Inc.*, 2017 WL 6367894, *5 (E.D. Pa. Dec. 13, 2017) (finding that "Marriott's ownership and operation of hundreds of hotels in Pennsylvania fall[s] short of showing that Defendant Marriott is 'essentially at home' in Pennsylvania, as required under *Goodyear* [ ] and *Daimler* [ ]" and that "[a]t most, Plaintiffs' contentions establish that Defendant Marriott has a business presence in Pennsylvania").

**2.     Specific Jurisdiction**

Plaintiffs also contend that Marriott is subject to personal jurisdiction in South Carolina based on the concept of specific jurisdiction. Specifically, Plaintiffs assert that Marriott "operates a world-wide hotel booking system through its website," which allows customers, including South Carolina residents, to book any hotel directly. (ECF No. 26 at 4.) Plaintiffs contend that Marriott specifically targets South Carolina residents by having South Carolina listed in its drop-down address menu of its booking process, asserting that federal courts have attached importance to the listing of a jurisdiction in drop-down menus of websites. (*Id.* n.1.) Plaintiffs assert that their claims, "which are based on both contract and tort, arise out of Marriott's operation of the business of a hotel system in South Carolina, including the 'Autograph Collection' hotels," one of which, the Grand Bohemian Hotel Charleston, is located in South Carolina. (*Id.* at 4.) According to Plaintiffs, Mr. Fidrych's booking was done through the Marriott website, and Mr. Fidrych is a Marriott Rewards member and received rewards for his stay at the Boscolo.

In support of their assertion, Plaintiffs rely on the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, where the Court concluded that the California courts had specific jurisdiction over the claims of *resident* plaintiffs against Bristol-Myer Squibb based on the company's drug Plavix. 137 S.Ct. 1773 (2017). There, the Court stated that "for a court to exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*." 137 S.Ct. 1773, 1780 (2017) (quoting *Daimler*, 571 U.S. at 127). According to Plaintiffs, this suit arises out of or relates to Marriott's contacts with the forum because the booking of the Boscolo hotel was done through Marriott's website on behalf of Mr. Fidrych, a South Carolina resident, and because Marriott engages in numerous marketing and booking activities directed at South Carolina

15

residents like Mr. Fidrych.  In addition, Plaintiffs contend that the "apparent agency allegations of the Complaint, along with evidence from Marriott's website regarding booking of the Boscolo [ ], are more than sufficient to meet the prima facie standard to overcome Marriott's motion to dismiss for lack of personal jurisdiction."  (ECF No. 26 at 8.)

After consideration, the Court is not convinced by Plaintiffs' arguments.  First, with respect to Plaintiffs' reliance on Marriott's website, including the drop-down menu that includes South Carolina, the Fourth Circuit has noted that due to the nature of the internet: "If we were to conclude as a general principle that a person's act of placing information on the Internet subjects that person to personal jurisdiction in each State in which the information is accessed, then the defense of personal jurisdiction, in the sense that a State has geographically limited judicial power, would no longer exist." *ALS Scan, Inc.*, 293 F.3d at 712.  In that case, the Fourth Circuit noted that in light of electronic advances, it was necessary to develop the more limited circumstances when it can be deemed that an out-of-state citizen has "entered" the State via the Internet for jurisdictional purposes, noting that "a State does have limited judicial authority over out-state-persons who use the Internet to contact persons within the State."  *Id.* at 713.  Ultimately, the Fourth Circuit determined that "specific jurisdiction in the Internet context may be based only on an out-of-state person's Internet activity directed at [the state] and causing injury that gives rise to a potential claim cognizable in [the state]."  *Id.* at 714.

Here, the Court does not believe that Marriott's website, which includes the drop-down menu listing South Carolina *along with all 50 of the other United States*, satisfies the Fourth Circuit's standard in *ALS* or otherwise demonstrates electronic activity specifically directed to South Carolina.  Moreover, as a practical matter, the Court notes that Plaintiffs

16

have offered no evidence to show that Plaintiff even booked the reservation through the website.[3]

In addition, the Court finds Plaintiff's reliance on *Bristol-Myers* unavailing. As Marriott points out in its reply, the resident plaintiffs in *Bristol-Myers* were prescribed, obtained, and ingested the drug at issue in California, "thus creating the affiliation between the forum and the underlying controversy as discussed by the Court in *Goodyear*." (ECF No. 28 at 4.)[4] In contrast, here, Mr. Fidrych was injured by a broken shower door in his hotel room in Italy, and there is no indication that Marriott did anything in South Carolina to somehow cause or contribute to the injury. Plaintiff's injury did not arise from a business transaction or any conduct by Marriott in South Carolina. Nor did Marriott cause a tortious injury in South Carolina; the injury occurred in Italy.

Based on the foregoing, the Court believes it would be unreasonable to exercise specific jurisdiction over Marriott in light of the particular circumstances of this case. Accordingly, the Court grants Marriott's motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

**B.     Defendants' Remaining Arguments**

In addition to seeking dismissal pursuant to Rule 12(b)(2) of the Federal Rules of

---

[3] In fact, according to Plaintiff's complaint, he did not even book his hotel; rather, Ray Wellington, the captain in charge of Plaintiff's trip, booked the hotel through a third-party, Universal Aviation, because Wellington previously had a favorable experience at the Boscolo Nice. (ECF No. 1 ¶ 15.) There is no indication whether either Wellington or Universal Aviation are South Carolina residents.

[4] Likewise, the Court agrees with Marriott that Plaintiff's reliance on *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), is also unavailing. There, the Supreme Court held that New Hampshire courts had specific jurisdiction over a claim by a New York resident who sued Hustler for libel based on the magazine's distribution in New Hampshire. As Marriott points out, an affiliation between the forum and the underlying controversy existed in *Keeton* because the statements made by the nonresident defendant were published in New Hampshire, whereas in this case, no such affiliation between the forum and the underlying controversy exists because the underlying controversy actually occurred in Italy.

Civil Procedure, Marriott also seeks dismissal based on Rule 12(b)(6) of the Federal Rules of Civil Procure and based on the doctrine of *forum non conveniens*.[5]  Because the Court has determined that it would be unreasonable to exercise personal jurisdiction over Marriott, the Court declines to decide these other issues.[6]

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that Plaintiffs' motion to reconsider (ECF No. 21); motion for sanctions (ECF No. 23); and motion for discovery (ECF No. 32) are denied; and Marriott's motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure (ECF No. 18) is granted.

**AND IT IS SO ORDERED.**

The Honorable Bruce Howe Hendricks
United States District Judge

August 1, 2018
Charleston, South Carolina

---

[5] Marriott also seeks dismissal of Plaintiffs' request for punitive damages.

[6] As a practical matter, however, the Court notes that with respect to Marriott's argument that it is an improper party because the ownership, control, and management of the Boscolo Milano is governed by a Franchise Agreement between a non-party franchisor and a non-party franchisee, it appears that Defendants' argument relies in large part on whether Plaintiffs can *offer evidence* to demonstrate the alleged association between it and the Boscolo Milano hotel.  Thus, it appears that it would be premature to decide this issue on a Rule12(b)(6) motion rather than on a motion for summary judgment following discovery.  (*See*, *e.g.*, ECF No. 19 at 12 ("*There is no evidence* of record to establish tat Marriott holds any right to control the day-to-day operations of the Boscolo Milano hotel, much less enough control to establish vicarious liability") (emphasis added); ECF No. 28 at 9 ("*There is no evidence* that Plaintiff relied upon any alleged association between the Boscolo hotel and Marriott at the time of booking.") (emphasis added).); *see also DeFederico v. Marriott, Internat'l, Inc.*, 667 F. App'x 830 (4th Cir. 2017) (granting *summary judgment* to hotel franchisor that did not voluntarily undertake a duty to establish security measures at hotel).